## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
|  | : | **CRIMINAL NO.** _____ |
| **UNITED STATES OF AMERICA** | : | **DATE FILED:** _____ |
|  | : |  |
| **v.** | : | **VIOLATIONS:** |
|  | : |  |
|  | : |  |
| **BRANDON SEGERS** | : | **18 U.S.C. § 1349 (conspiracy to commit** |
| **DIONNE SEGERS** | : | **wire fraud -  1 count)** |
| **MICHAEL MATTHEWS** | : | **18 U.S.C. § 1343 (wire fraud -  7 counts)** |
|  | : | **18 U.S.C. § 641 (theft of public money –** |
|  | : | **4 counts)** |
|  | : | **18 U.S.C. § 371 (conspiracy to defraud** |
|  | : | **the United States - 1 count)** |
|  | : | **18 U.S.C. § 2 (aiding and abetting)** |
|  | : | **Notice of forfeiture** |

## I N D I C T M E N T

### COUNT ONE

**THE GRAND JURY CHARGES THAT:**

At times material to this indictment:

### INTRODUCTION

1.    On March 13, 2020, the President declared the ongoing COVID-19

pandemic to be an emergency under Section 501(b) of the Robert T. Stafford Disaster Relief and

Emergency Assistance Act.

2.    On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security

Act (CARES Act) was signed into law. The CARES Act created the PUA (Pandemic

1

Unemployment Assistance) program, which provided unemployment benefits to individuals not eligible for regular unemployment compensation or extended unemployment benefits.

        3.      The PUA program was administered by the various states, including the Commonwealth of Pennsylvania, but its benefits were funded by the federal government. In Pennsylvania, the Pennsylvania Department of Labor and Industry (PA DLI) administered the PUA program, on behalf of the United States Department of Labor, which was responsible for overseeing the PUA program.

        4.      PA DLI required that a PUA claim be made online via the PUA website, https://pua.benefits.uc.pa.gov. The applicant was required to enter personal identification information (PII), including name, date of birth, social security number, email address, telephone number, and a physical address. An applicant was also required to answer a series of questions that enabled the PA DLI to determine the applicant's eligibility and payment amount. Once awarded PUA benefits, the applicant was required to submit weekly certifications showing continuing eligibility. While each state administered the application slightly differently, every state referenced in this indictment required that the application for PUA benefits as well as the weekly certifications be made online.

        5.      While each state administered its own PUA program, the application used by each state was a standard online application form. The form consisted of 27 different sections including a range of questions within each section. Some of the questions asked for the applicant's PII and biographical information while other questions dealt with the applicant's eligibility for the program and work history. An applicant was required to provide his or her current employment

2

status and answer if he or she was able to accept a job if offered. If the applicant could not accept a job, the applicant was required to provide a reason for not being able to accept a job.

6.      The applicant was also asked whether they were unemployed as a result of a pandemic or major disaster. If the applicant's employment had not been affected as a result of a pandemic or major disaster, the applicant was not eligible for PUA benefits. If the applicant's employment had been affected by a pandemic or major disaster, the application was also required to note in which state the applicant was affected by the pandemic or major disaster and the nature of the pandemic or major disaster.

7.      In the 'self-certification' section of the application, the applicant was required to answer questions regarding the nature and impact of a pandemic or major disaster on the applicant's employment status. First, the applicant was required to disclose the pandemic or major disaster which affected the applicant's employment. An applicant was only eligible to receive weekly PUA benefits if the applicant was unemployed for reasons related to the COVID-19 pandemic. Second, the applicant was required to disclose the date of the applicant's last day of work. Finally, if the applicant quit their job due to COVID-19, the applicant was required to supply a reason for quitting.

8.      As to all of these preceding questions, the applicant was required to "acknowledge that I understand that making the certification is under penalty of perjury and intentional misrepresentation in self-certifying that I may fall in one or more of these categories is fraud."

9.      The applicant was also required to complete another certification, under penalty of perjury, that if offered a job, the applicant must be able to accept it. An applicant must

read and understand the PUA Compensation Handbook, which indicated that any earnings must be reported for each week a person works. The applicant was also required to certify once again as to the application that "all information is true and complete" and that if the applicant provided false information the applicant could be subject to criminal prosecution.

10.     If PA DLI or another state's administrative agency approved an application for PUA benefits, the applicant was then eligible to receive benefits in the form of checks, electronic fund transfers, or debit cards, and the checks and debit cards were mailed via the United States Postal Service to the physical address that appeared on the application. When a state agency approved an applicant's eligibility, the agency also established the applicant's period of benefits, amount of weekly benefit, and maximum total benefit amount. However, even after this occured, the applicant did not receive the benefits unless the applicant performed the appropriate weekly certifications.

11.     The recipient of PUA benefits received a unique applicant number that corresponded to the applicant's initial application and weekly certifications. Payments for PUA were based on a seven-day period, from Sunday through Saturday. Thus, the benefits recipient was required to certify every seven days that he or she: a) was ready, willing and able to work each day; b) was seeking full time employment; c) did not refuse any job offers or referrals; and, d) had reported any employment during the week and the gross pay or other payments received. The weekly certification was required to be completed in a timely manner. A delay in the weekly certification could result in a delay or denial of further payments.

12.     Defendants BRANDON SEGERS and MICHAEL MATTHEWS were federal inmates in the custody of the Bureau of Prisons ('BOP'). At one time, both of these

4

defendants were incarcerated at the Federal Corrections Institution ('FCI'), Cumberland in Maryland. These defendants were also incarcerated with M.P., M.W., D.D. and T.C. at this facility.

13.     On March 30, 2020, defendant BRANDON SEGERS was released from FCI Cumberland to a halfway house and subsequently, on April 15, 2020, was released to home confinement.  Defendant SEGERS' home confinement concluded on August 28, 2020.

14.     T.C. was in the custody of the BOP.

15.     D.D. was in the custody of the BOP.

16.     M.P. was in the custody of the BOP.

17.     Defendant MICHAEL MATTHEWS was in the custody of the BOP.

18.     M.W. was in the custody of the BOP from May 11, 2015 until he was released on September 27, 2021.

### CONSPIRACY AND THE SCHEME TO DEFRAUD

19.     From on or about March 4, 2020 to on or about February 7, 2021 in the Eastern District of Pennsylvania, and elsewhere, defendants

### BRANDON SEGERS,
### DIONNE SEGERS,
### and
### MICHAEL MATTHEWS

conspired and agreed together and with other persons known and unknown to the Grand Jury to commit wire fraud, that is, to devise and intend to devise a scheme to defraud various state and federal agencies, and to obtain money and property, specifically PUA benefits, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1343.

5

## MANNER AND MEANS

It was part of the scheme that:

20.     Defendant   BRANDON   SEGERS   communicated   with   defendant
MICHAEL MATTHEWS while defendant MATTHEWS was incarcerated at FCI Cumberland via
telephone and email. Defendant MATTHEWS collected the necessary personal identifying
information (PII) of other inmates for PUA applications to be filed and then transmitted the inmate
PII to defendant BRANDON SEGERS via telephone and/or email.

21.     Defendant BRANDON SEGERS took the inmates' PII transmitted by
defendant MICHAEL MATTHEWS, and defendants BRANDON SEGERS and defendant
DIONNE SEGERS caused fraudulent PUA applications to be filed online using the information.

22.     Defendants BRANDON SEGERS and DIONNE SEGERS also caused
fraudulent PUA applications to be filed in the state of Pennsylvania under their names and using
their PII. Defendant BRANDON SEGERS also caused a fraudulent PUA application to be filed in
his name in the state of Massachusetts.

23.     As part of both their own applications and the inmate applications,
defendants BRANDON SEGERS and DIONNE SEGERS caused PUA benefits to be directly
deposited into their bank accounts or caused US Bank debit cards to be mailed to an address they
controlled listed on the application.

24.     After they received and accessed the US Bank debit cards, defendants
BRANDON SEGERS and DIONNE SEGERS made expenditures directly from the cards,

6

withdrew cash from the cards, or transferred money from the cards to other bank accounts. Additionally, defendants BRANDON SEGERS and DIONNE SEGERS also spent PUA benefits that had been deposited directly into their bank accounts.

25.     As payment for providing inmate information, defendants BRANDON SEGERS and DIONNE SEGERS caused deposits to be made to the commissary accounts of each incarcerated inmate. These deposits were made onto the commissary accounts of defendant MICHAEL MATTHEWS and inmates T.C., M.P. and M.W. The deposits were made via Western Union wire transfer or by sending money to a BOP address in Iowa.

OVERT ACTS

In furtherance of the conspiracy, and to accomplish its object, the defendants committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

1.     On or about March 4, 2020, defendant MICHAEL MATTHEWS sent an email to an account at the address 3600bez@gmail.com. The contact name that defendant MATTHEWS listed for this email on the BOP registry was listed as "Yb Nba".

2.     On or about March 17, 2020, at approximately 11:17 a.m., defendant MICHAEL MATTHEWS received an email from defendant BRANDON SEGERS using the address 3600bez@gmail.com and stating, "Yea bro I've deff been thinking about it me an my wife gonna probably take a dime a piece...bro it's so much to do call me when u get a chance."

3.     On or about March 17, 2020, at approximately 7:21 p.m., on a BOP recorded line, defendant MICHAEL MATTHEWS placed a call to (443)-978-9120, which was

registered to defendant BRANDON SEGERS. Defendant MATTHEWS listed the subject name for this phone number as "Yb Nba" in the BOP registry associated with his call list.

4.     On or about June 17, 2020, at approximately 9:51 a.m, on a BOP recorded line, defendant MICHAEL MATTHEWS placed a telephone call to defendant BRANDON SEGERS at (443)-978-9120. On this call, defendant BRANDON SEGERS told defendant MATTHEWS that he was going to "Western Union" him "some money." Defendant BRANDON SEGERS then stated, "this unemployment shit, this shit is crazy. I wish I had the time to talk to you." Defendant MATTHEWS then stated, "I wish I could talk to you too." Defendant BRANDON SEGERS then told defendant MATTHEWS, "I might have to have you call me back because I can do your shit right and have your unemployment check sitting so when you come home you can have a nice little check sitting on you."

5.     On or about June 17, 2020, as the call continued, defendant DIONNE SEGERS asked defendant BRANDON SEEGERS "for the account number…for the money." Defendant BRANDON SEEGERS then asked defendant MICHAEL MATTHEWS for his inmate register number and defendant MATTHEWS provided his BOP number. Defendant BRANDON SEEGERS also asked defendant MATTHEWS for his social security number in order to file an unemployment application on behalf of defendant MATTHEWS. Later in the call, defendant BRANDON SEEGERS said "I've been making like 5 grand a week off this shit tho."

6.     After this call, at approximately, 11:03 a.m. on or about June 17, 2020, defendant DIONNE SEGERS wired $100 dollars into the BOP commissary account of defendant MICHAEL MATTHEWS.

8

7.     Also on or about June 17, 2020, defendant MICHAEL MATTHEWS sent defendant BRANDON SEGERS an email providing his own social security number and stating, "Yo Bro…I can't stress how important this info is…but you know…so please Bro, protect me like you would protect yourself…Michael A. Matthews, SS# xxx-xx-xxxx."

8.     On or about June 18, 2020, defendant BRANDON SEGERS emailed defendant MICHAEL MATTHEWS telling him, "Bro I need ur bday send me that ASAP an I got u bro…". Defendant MATTHEWS replied a short time later and provided his birthday.

9.     On or about July 6, 2020, defendant MICHAEL MATTHEWS sent defendant BRANDON SEGERS an email with inmate M.P.'s phone number and correct social security number.

10.     On or about July 8, defendant MICHAEL MATTHEWS sent defendant BRANDON SEGERS an email with M.P.'s correct social security number and date of birth.

11.     On or about July 10, 2020 defendant MICHAEL MATTHEWS sent defendant BRANDON SEGERS an email containing the social security number and date of birth of inmate M.K..

12.     On or about July 12, 2020, defendant DIONNE SEGERS sent $1,000 to inmate M.W.'s BOP commissary account via Western Union wire transfer. On the transfer details, defendant DIONNE SEGERS listed her address as 2449 N 30th Street, Philadelphia, PA.

13.     On or about July 12, 2020, defendants BRANDON SEGERS and DIONNE SEGERS sent defendant MICHAEL MATTHEWS the following deposits on his BOP account:

| Amount | Name | Address |
|--------|------|---------|
| $500.00 | Segers, Dionnee | 2449 N 30th Street |

| $500.00 | Segers, B | 2449 N 30th Street |
|---------|-----------|--------------------|
| $500.00 | S, D | 2449 N 30th Street |
| $400.00 | S, D | 2449 N 30th Street |
| $500.00 | S, D | 2449 N 30th Street |
| $500.00 | S, D | 2449 N 30th Street |
| $500.00 | S, D | 2449 N 30th Street |

14.     After these transfers were made, later on or about July 12, 2020, defendant MICHAEL MATTHEWS and defendant BRANDON SEGERS had a phone conversation. Defendant MATTHEWS told defendant BRANDON SEGERS "not to do it again" because "all the five, five, five looks crazy" and that it looks "spooky". At the end of the call, defendant MATTHEWS told defendant BRANDON SEGERS to hold on to his money until future notice.

15.     On or about July 12, 2020, defendant MICHAEL MATTHEWS sent an email to defendant BRANDON SEGERS with the social security number and email of FCI Cumberland inmate D.D.

All in violation of Title 18, United States Code, Section 1349.

10

## COUNTS TWO THROUGH EIGHT

**THE GRAND JURY FURTHER CHARGES THAT:**

        1.    The allegations in paragraphs 1 through 18 of Count One are incorporated herein.

## THE SCHEME

        2.    Beginning on or about March 4, 2020, and continuing until on or about February 7, 2021, within the Eastern District of Pennsylvania, the District of New Jersey, and elsewhere, defendants

**BRANDON SEGERS,**
**DIONNE SEGERS, and**
**MICHAEL MATTHEWS,**

together and with co-schemers known and unknown to the Grand Jury, devised and intended to devise a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS

        3.    Paragraphs 20 through 25 of Count One are incorporated here.

## WIRE FRAUD

        4.    On or about each of the following dates, in the Eastern District of Pennsylvania, and elsewhere, defendants

**BRANDON SEGERS,**
**DIONNE SEGERS, and**
**MICHAEL MATTHEWS,**

together with other co-schemers known and unknown to the Grand Jury, for the purpose of executing the scheme described above, knowingly transmitted and caused to be transmitted by

11

means of wire communication in interstate commerce, the following writings, signs, signals and

pictures, each wire communication constituting a separate count:

| COUNT | DATE | DESCRIPTION |
|-------|------|-------------|
| TWO | 06/10/2020 | Wire communications between an electronic device in Philadelphia, Pennsylvania and a server in California to submit an electronic application for PUA benefits from the state of Pennsylvania |
| THREE | 5/18/2020 | Wire communications between an electronic device in Philadelphia, Pennsylvania, and a server in California to submit an electronic application for PUA benefits from the state of Massachusetts |
| FOUR | 05/17/2020 | Wire communications between an electronic device in Philadelphia, Pennsylvania and a server in California to submit an electronic application for PUA benefits from the state of Pennsylvania |
| FIVE | 06/18/2020 | Wire communications between an electronic device in Philadelphia, Pennsylvania and a server in California to submit an electronic application for PUA benefits from the state of Pennsylvania |
| SIX | 06/21/2020 | Wire communications between an electronic device in Philadelphia, Pennsylvania and a server in California to submit an electronic application for PUA benefits from the state of Pennsylvania |
| SEVEN | 07/09/2020 | Wire communications between an electronic device in Philadelphia, Pennsylvania and a server in California to submit an electronic application for PUA benefits from the state of Pennsylvania |
| EIGHT | 07/11/2020 | Wire communications between an electronic device in Philadelphia, Pennsylvania and a server in California to submit an electronic application for PUA benefits from the state of Pennsylvania |

All in violation of Title 18, United States Code, Section 1343.

## COUNT NINE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.       The allegations in paragraphs 1 through 18 of Count One are incorporated

herein.

2.       From on or about March 4, 2020 to on or about February 7, 2021 in the

Eastern District of Pennsylvania, and elsewhere, defendants

**BRANDON SEGERS,
DIONNE SEGERS, and
MICHAEL MATTHEWS**

knowingly and willfully conspired and agreed together and with each other, and with other persons

known and unknown to the Grand Jury, to defraud the United States, specifically of Pandemic

Unemployment Assistance funds under the care of the United States Department of Labor.

## MANNER AND MEANS

3.       Paragraphs 20 through 25 of Count One are incorporated here.

## OVERT ACTS

4.       Paragraphs 1 Through 15 of the Overt Acts section of Count One are

incorporated here.

All in violation of Title 18, United States Code, Section 371.

14

## COUNT TEN

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      The allegations in paragraphs 1 through 18 and 20 through 25 of Count One are incorporated herein.

2.      On June 10, 2020, an application for Pennsylvania PUA benefits was filed in the name of defendant BRANDON SEGERS. This application was transmitted to a server in the state of California from the IP address of 71.225.28.71, registered at the address of 2449 N 30th Street, Philadelphia, Pennsylvania. The application listed defendant BRANDON SEGERS residential and mailing address for benefits as 3823 N 16th Street, Philadelphia, PA. The application stated that defendant BRANDON SEGERS lost his job due the COVID-19 pandemic, that he closed his business due to COVID-19, and that his last day of work was March 1, 2020. These statements were false as defendant BRANDON SEGERS was incarcerated on March 1, 2020.

3.      The application falsely stated that defendant BRANDON SEGERS made the following amounts in 2019:

> What was your net earnings for the 1st quarter of 2019? $8,000.00
> What was your net earnings for the 2nd quarter of 2019? $8,000.00
> What was your net earnings for the 3rd quarter of 2019? $9,000.00
> What was your net earnings for the 4th quarter of 2019? $9,000.00

These statements were also false as defendant BRANDON SEGERS was incarcerated throughout 2019 and did not earn these amounts.

4.      Defendant BRANDON SEGERS' application was approved for benefits. As a result of the false statements on the Pennsylvania application and subsequent weekly

15

certifications, defendant BRANDON SEGERS received a total of $16,680 in the form of two checks and a US Bank debit card.

      5.      From on or about June 10, 2020, to on or about February 7, 2021, in the Eastern District of Pennsylvania, and elsewhere, defendant

### BRANDON SEGERS

did knowingly steal and convert to his use or the use of another, money or a thing of value of the United States, specifically, Pandemic Unemployment Assistance funds under the care of the United States Department of Labor, in a value exceeding $1,000.

      In violation of Title 18, United States Code, Sections 641 and 2.

16

## COUNT ELEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

1.    The allegations in paragraphs 1 through 18 and 20 through 25 of Count One are incorporated herein.

2.    On May 17, 2020, a PUA application for the state of Pennsylvania was filed in the name of defendant DIONNE SEGERS. This application was transmitted to a server in the state of California from the IP address of 71.225.28.71 registered to the address of 2449 N 30th Street, Philadelphia, Pennsylvania. The application listed the residential and mailing address for benefits as 2449 N 30th Street, Philadelphia, Pennsylvania. The application stated that defendant DIONNE SEGERS was working part-time. However, the application also stated that defendant DIONNE SEGERS lost her job due to the COVID-19 pandemic and her last day of work was March 1, 2020.

3.    The wages section of the application falsely listed defendant DIONNE SEGERS as self-employed with the following wages for 2019:

> What was your net earnings for the 1st quarter of 2019? **$ 0.00**
> What was your net earnings for the 2nd quarter of 2019? **$ 700.00**
> What was your net earnings for the 3rd quarter of 2019? **$ 700.00**
> What was your net earnings for the 4th quarter of 2019? **$ 700.00**

In fact, state wage and payroll records reveal that defendant DIONNE SEGERS was not self-employed in that period and made over $10,000 in wages in each of those quarters in 2019.

4.    Weekly certifications for this application were submitted for weekly periods from March 1, 2020 to November 11, 2020 falsely stating under the penalty of perjury that defendant DIONNE SEGERS continued to not be employed and was not receiving income, when

17

in fact defendant DIONNE SEGERS was employed during this period and receiving regular payroll payments to her bank account.

5.     As a result of the fraudulent application and weekly certifications, defendant DIONNE SEGERS received $14,008 in Pennsylvania PUA benefits.

6.     From on or about May 21, 2020, to on or about February 7, 2021, in the Eastern District of Pennsylvania, and elsewhere, defendant

**DIONNE SEGERS**

did knowingly steal and convert to her use or the use of another, money or a thing of value of the United States, specifically, specifically, of Pandemic Unemployment Assistance funds under the care of the United States Department of Labor, in a value exceeding $1,000.

In violation of Title 18, United States Code, Sections 641 and 2.

**COUNT TWELVE**

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.     The allegations in paragraphs 1 through 18 and 20 through 25 of Count One are incorporated herein.

      2.     On or about June 17, 2020, defendant MICHAEL MATTHEWS sent defendant BRANDON SEGERS an email providing his own social security number and stating, "Yo Bro…I can't stress how important this info is…but you know…so please Bro, protect me like you would protect yourself…Michael A. Matthews, SS# xxx-xx-xxxx."

      3.     On or about June 18, 2020, defendant BRANDON SEGERS emailed defendant MICHAEL MATTHEWS telling him, "Bro I need ur bday send me that ASAP an I got u bro…". Defendant MATTHEWS replied a short time later and provided his birthday.

      4.     On June 18, 2020, a PUA application for the state of Pennsylvania was filed using defendant MICHAEL MATTHEWS' name, date of birth, and social security number. This application was transmitted to a server in the state of California from the IP address of 71.225.28.71 registered at the address of 2449 N 30th Street, Philadelphia, Pennsylvania. The application falsely listed defendant MATTHEWS' residential and mailing address for benefits as 2451 N 30th Street, Philadelphia, Pennsylvania. Defendant MATTHEWS' application falsely stated that he lost his job due the COVID-19 pandemic and that he was willing and able to accept a job offer at any time, and also falsely stated that defendant MATTHEWS was affected by the pandemic in the state of Pennsylvania, when in fact defendant MATTHEWS was incarcerated during the relevant time period in Maryland.

5.        From June 19, 2020 to July 9, 2020, weekly certifications were submitted falsely stating that defendant MICHAEL MATTHEWS was willing and able to accept a job offer. As a result of the false application and weekly certifications, $14,280 was distributed to the US Bank debit card associated with defendant MATTHEWS' application.

6.        From on or about June 18, 2020, to on or about February 7, 2021, in the Eastern District of Pennsylvania, and elsewhere, defendants

**BRANDON SEGERS**
**and**
**MICHAEL MATTHEWS**

did knowingly steal and convert to their use or the use of another, money or a thing of value of the United States, specifically, specifically, of Pandemic Unemployment Assistance funds under the care of the United States Department of Labor, in a value exceeding $1,000.

In violation of Title 18, United States Code, Sections 641 and 2.

20

## COUNT THIRTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

At times material to this indictment:

### EIDL PROGRAM

1.      On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act") (Pub. L. 116-136) became law and provided emergency assistance for individuals, families, and businesses affected by the coronavirus pandemic. The CARES Act provided multiple programs for businesses including the Economic Injury Disaster Loan ("EIDL") program. The EIDL program provided low-rate emergency loan options for struggling businesses for amounts up to $500,000. This program is administered by the Small Business Administration ("SBA"). Applications for the EIDL program are made through an online SBA portal.

2.      As part of the application progress, an applicant was required to submit information about the applicant's business. This information included, amongst other categories, the organization type of the business, gross revenues for the twelve months preceding January 31, 2020, cost of goods sold for the twelve months preceding January 31, 2020, and the number of employees working at the business.

3.      As part of the application, an applicant can also request an emergency advance of $10,000. The SBA will pay this emergency advance within three days of the applicant submitting the information. To receive this advance and/or the ultimate loan, the applicant must enter bank account information for the advance funds and/or loan to be deposited into.

4.      Before an applicant can submit the application, the applicant must certify, under the penalty of perjury and laws of the United States, that the information on the application

is true and correct.

        5.      The SBA proscribes limited uses for any funds, including the emergency

advance, dispersed under this program. The SBA requires that the applicant only "use all

proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster

occurring in the month of January 31, 2020 and continuing thereafter and to pay Uniform

Commercial Code (UCC) lien filing fees."

## DIONNE SEGERS' EIDL APPLICATON AND USE OF FUNDS

        6.      On or about June 20, 2020, defendant DIONNE SEGERS submitted an

EIDL program application to the SBA for a business for which defendant she was listed as the

sole proprietor and owner. The application listed that the business address was 2449 N 30th Street,

Philadelphia, PA 19140, which is defendant DIONNE SEGERS' residential address as well as the

address listed as her residential and mailing address on the PUA application submitted under her

name.

        7.      The EIDL application listed that the business type was agriculture and was

also a non-profit. Additionally, the application listed that the business had 40 employees and had

the following revenue statistics: $14,500 in gross revenue, $18,000 for cost of goods, and $8,000

cost of rental properties. The application also requested an emergency advance of $10,000 and listed

defendant DIONNE SEGERS' Navy Federal Credit Union personal checking account information

as the bank information where the emergency advance should be deposited.

        8.      Prior to submitting the application, defendant DIONNE SEGERS caused to

be certified that all information on the application was true and correct under the penalty of the laws

of the United States and perjury.  The statements on the application were not true and correct but

22

false as the business did not exist.

        9.     On or about June 23, 2020, the SBA deposited the emergency advance of $10,000 requested on the application into defendant DIONNE SEGERS' Navy Federal Credit Union personal checking account.

        10.    Thereafter, from on or about June 23, 2020, to on or about June 26, 2020, defendant DIONNE SEGERS did not spend the emergency advance on proper business uses as required under the application by the SBA. Rather, defendant DIONNE SEGERS transferred portions of the emergency advance to her personal savings account and spent the remaining portion of the emergency advance on personal goods and items. Defendant DIONNE SEGERS spent the emergency advance on large purchases at luxury retailers, at a hair salon, on a car payment and loans, at food stores and a phone bill, amongst others.

        11.    From on or about June 20, 2020 to on or about June 26, 2021 in the Eastern District of Pennsylvania, and elsewhere, defendant

### DIONNE SEGERS

did knowingly steal and convert to her use or the use of another money or a thing of value of the United States, specifically, Economic Injury Disaster Loan (EIDL) funds under the care of the United States Small Business Administration, in a value exceeding $1,000.

        In violation of Title 18, United States Code, Sections 641.

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times relevant to this indictment:

1.     As a result of the violations of Title 18, United States Code, Sections, 641, and 1343, as set forth in this indictment, defendants,

**BRANDON SEGERS**
**And**
**DIONNE SEGERS,**

shall forfeit to the United States of America any property that constitutes, or is derived from, proceeds traceable to the commission of such offenses, including, but not limited to, the sum of $181,765.00.

2.     If any of the property subject to forfeiture, as a result of any act or omission of the Defendant:

> (a)     cannot be located upon the exercise of due diligence;
>
> (b)     has been transferred or sold to, or deposited with, a third party;
>
> (c)     has been placed beyond the jurisdiction of the Court;
>
> (d)     has been substantially diminished in value; or
>
> (e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c) incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the Defendant up to the value of the property subject to forfeiture.

24

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

**A TRUE BILL:**

_____

**JENNIFER ARBITTIER WILLIAMS**
**ACTING UNITED STATES ATTORNEY**

25